

APR 3 2018

SCOTT B. MISERENDINO, SR.,

        Petitioner,

    v.                       **CIVIL NO. 2:17cv339**
                          **[ORIGINAL CRIMINAL NO. 2:14cr79]**

UNITED STATES OF AMERICA,

        Respondent.

## <u>OPINION</u>

This matter comes before the court on the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") and accompanying Memorandum in Support, filed respectively by counsel on June 23, 2017, and July 21, 2017. ECF Nos. 94, 103.[1]

On July 21, 2017, the court ordered the government to file responsive pleadings to the Petitioner's § 2255 Motion within sixty (60) days of the entry of that order. ECF No. 102. On September 19, 2017, the United States filed a Response in Opposition. ECF No. 104. On September 29, 2017, the court granted the Petitioner's Motion for Leave to File a Reply. ECF No. 107. On October 18, 2017, the Petitioner filed, through

---

[1] A redacted Memorandum in Support was filed on June 23, 2017. ECF No. 95. However, the court ordered the Petitioner to file an unredacted version. ECF No. 96. The unredacted version was entered on July 21, 2017. ECF No. 103.

counsel, a Reply to the government's Response in Opposition. ECF No. 108. The § 2255 Motion is now ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 23, 2014, a grand jury returned a six-count Indictment, naming the Petitioner as one of two co-defendants. ECF No. 1. Count One charged the Petitioner with Conspiracy to Commit Bribery of a Public Official, in violation of 18 U.S.C. § 371. Id. at 3-11. Count Four charged the Petitioner with Acceptance of a Bribe by a Public Official, in violation of 18 U.S.C. § 201(b)(2)(A). Id. at 12-13. Count Five charged the Petitioner with Conspiracy to Commit Obstruction of Criminal Investigations and to Commit Tampering with a Witness, in violation of 18 U.S.C. § 371. Id. at 13-16. Count Six charged the Petitioner with Obstruction of Criminal Investigations, Aiding and Abetting, in violation of 18 U.S.C. § 1510(a). Id. at 16. The Indictment also contained a Forfeiture Notice to the defendants. Id. at 16-17. On August 12, 2014, the Petitioner, appearing with counsel, pleaded guilty to Counts One and Four, and a Plea Agreement was entered that same day. Plea Agreement Hearing, ECF No. 38; Plea Agreement, ECF No. 39. The Petitioner and the government agreed to a Statement of Facts, ECF No. 40, which describes the following foundations for the Petitioner's guilty plea.

At the time of his arrest, the Petitioner was a government contractor at the Military Sealift Command ("MSC"), which is an entity of the United States Navy that provides transportation for the Navy and the Department of Defense. Statement of Facts at 1. He was employed by two companies to provide information technology and communications services and support to MSC. Id. The Petitioner's duties included managing MSC's telecommunications projects, which involved writing Statements of Work as directed, preparing and executing budgets, reviewing proposals, and influencing the awarding of government task orders. Id.

From November 2004 to November 2009, the Petitioner and an MSC employee, Kenny Toy, "solicited and received, both directly and indirectly, for personal gain, cash payments and other things of value" from two companies: Mid-Atlantic Engineering Technical Services, Inc. ("MAETS") and Miller, Hardman Design, Inc. ("MHD"). Id. at 2.[2] In exchange for these cash payments and other things of value, the Petitioner provided, and promised to provide, official assistance to MAETS and MHD. Id.

In total, the Petitioner and Toy jointly received at least $265,000 in cash bribes from MAETS and MHD that were intended to

---

[2] The two companies were referred to as Company A and Company B in the Statement of Facts. See, e.g., Statement of Facts at 2. However they were later named as MAETS and MHD, respectively. See Mem. in Supp. at 2 n.2, ECF No. 103.

3

influence their official acts. Id. at 4. The Petitioner and Toy also accepted other things of value to influence their official acts, including flat screen televisions, laptop computers, a paid vacation rental, signed sports memorabilia, and sporting equipment. Id. The official actions provided by the Petitioner and Toy on behalf of MSC that were favorable to MAETS and MHD included:

> i. assisting in the preparation of Statements of Work for tasks that [MAETS] and [MHD] sought to perform under U.S. Government contracts, subcontracts, and task orders;
>
> ii. influencing, or causing to be influenced, other government officials to further [MAETS's] and [MHD's] efforts to obtain U.S. Government contracts, subcontracts, and task orders;
>
> iii. influencing, or causing to be influenced, MSC contractors to further [MAETS's] and [MHD's] efforts to obtain U.S. Government subcontracts and task orders; and
>
> iv. providing favorable treatment to [MAETS] and [MHD] in connection with U.S. Government task orders.

Id. at 4-5. Further, during the period of time in which the Petitioner was accepting money and other things of value from MAETS and MHD, those companies received lucrative contracts, subcontracts, and task orders, totaling approximately $3 million for MAETS and $2.5 million for MHD. Id. at 5.

At the time he signed the Plea Agreement, the Petitioner confirmed, under oath, that he (1) "plead[s] guilty because [he] is in fact guilty of the charged offenses," (2) "admits the

4

facts set forth in the statement of facts filed with this plea agreement[,] and [(3)] agrees that those facts establish guilt of the offenses charged beyond a reasonable doubt." Plea Agreement ¶ 2. On November 7, 2014, this court adjudged the Petitioner guilty and sentenced him to sixty (60) months imprisonment on Count One and ninety-six (96) months imprisonment on Count Four, to be served concurrently, as well as a three (3) year term of supervised release. Sentencing Hearing, ECF No. 74; Judgment, ECF No. 78. The Petitioner did not appeal.

## II. GENERAL LEGAL PRINCIPLES

A prisoner may challenge a sentence imposed by a federal court, if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The prisoner bears the burden of proving one of those grounds by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). If he satisfies that burden, the court may vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(b). However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily

deny the motion. <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

Further, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214 (1996), imposes a one-year statute of limitations on § 2255 motions. Section 2255, as amended by AEDPA, provides in relevant part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Neither party has argued that subsections (1), (2), or (4) apply in this case. The Petitioner's judgment became final on November 24, 2014. <u>See</u> Fed. R. App. P. 4(b) (mandating that a criminal defendant file a notice of appeal within fourteen days

after the entry of judgment); <u>Clay v. United States</u>, 537 U.S. 522, 524-25 (2003) (stating that a judgment is final when the time for seeking review expires). Therefore, the one-year period to file a § 2255 motion pursuant to § 2255(f)(1) expired before the Petitioner filed this § 2255 Motion on June 23, 2017, making it untimely under 28 U.S.C. § 2255(f)(1). The Petitioner alleges no unlawful governmental action that prevented him from filing the § 2255 Motion, and the court finds none, so 28 U.S.C. § 2255(f)(2) is inapplicable. Lastly, the Petitioner provides no evidence of newly discovered facts that warrants the application of 28 U.S.C. § 2255(f)(4). Accordingly, the Petitioner must show that the § 2255 Motion is timely pursuant to 28 U.S.C. § 2255(f)(3) in order for the court to consider his claim on the merits. Namely, he must show a "newly recognized" right by the Supreme Court made "retroactively applicable to cases on collateral review." <u>Id.</u>

### III. ANALYSIS

The crime to which the Petitioner pleaded guilty, Acceptance of a Bribe by a Public Official, which he now challenges, punishes any person who:

> [B]eing a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act[.]

18 U.S.C. § 201(b)(2)(A).

The statute further defines "official act" to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).

On June 27, 2016, the Supreme Court interpreted the meaning of "official act" for purposes of 18 U.S.C. § 201, thereby narrowing its application. McDonnell v. United States, 136 S. Ct. 2355 (2016).[3] The Court in McDonnell held that to constitute an "official act," the government first "must identify a 'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a public official." Id. at 2368 (quoting 18 U.S.C. § 201(a)(3)). The Court stated that "a typical meeting, telephone call, or event arranged by a public official does not qualify as a 'cause, suit, proceeding or controversy.'" Id.

---

[3] The meaning of "official act" used by the Fourth Circuit prior to the Supreme Court's ruling in McDonnell was explained as, "'acts that a public official customarily performs,' including acts 'in furtherance of longer-term goals' or 'in a series of steps to exercise influence or achieve an end,'" 136 S. Ct. at 2366 (citation omitted), and "actions that have been clearly established by settled practice as part of a public official's position, even if the action was not taken pursuant to responsibilities explicitly assigned by law." Id. at 2373 (citation omitted).

"Pending" or "may by law be brought" suggests "something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete. In particular, 'may by law be brought' conveys something within the specific duties of an official's position." Id. at 2369 (emphasis in original). Further, that the matter may be brought before any public official "conveys that the matter may be pending either before the public official who is performing the official act, or before another public official." Id.

Second, the government "must prove that the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so." Id. at 2368. However, the public official "is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." Id. at 2370-71 (citation omitted). This agreement need not be explicitly stated, "and the public official need not specify the means that he will use to perform his end of the bargain." Id. at 2371. Further, the public official need not "intend to perform the 'official act,' so long as he agrees to do so." Id. Additionally, merely "expressing support . . . does not qualify as a decision or action . . . as long as the public official does not intend to exert pressure on another official or provide advice, knowing or

9

intending such advice to form the basis for an 'official act.'" Id. Thus, a public official may engage in an "official act" by "exert[ing] pressure on another official to perform an 'official act,' or . . . advis[ing] another official, knowing or intending that such advice will form the basis for an 'official act' by another official." Id. at 2372.

## A. Retroactivity

The Petitioner argues that McDonnell applies retroactively to his conviction, so his § 2255 Motion was timely filed because it was filed within one year of the date the Supreme Court decided McDonnell. See Mem. in Supp. at 1-2, ECF No. 103; Reply at 5-8, ECF No. 108. Specifically, the Petitioner argues that the holding in McDonnell constitutes a new right that was initially recognized by the Supreme Court on June 27, 2016, and that this new right is retroactively applicable to cases on collateral review. Reply at 5-8; see 28 U.S.C. § 2255(f)(3); § 2255 Mot. at 5 (arguing that his "actions no longer constitute crimes under the federal corruption statute," because "[t]he Supreme Court has significantly narrowed the statute under which petitioner was convicted"). The Government fails to raise as a potential issue the retroactivity of McDonnell, and does not attempt to argue that McDonnell does not apply retroactively to the Petitioner's conviction on collateral review. See generally, Resp. in Opp'n, ECF No. 104.

10

If the Petitioner's arguments are correct, his § 2255 Motion is timely under 28 U.S.C. § 2255(f)(3), because the § 2255 Motion was filed within one year of the Court's decision in McDonnell.[4] However, if the Court's ruling in McDonnell is not a new right recognized by the Supreme Court that applies retroactively, then the Petitioner's § 2255 Motion is untimely, because none of the limitations periods provided by 28 U.S.C. § 2255(f) would apply to the Petitioner's § 2255 Motion. Accordingly, the court must determine whether McDonnell establishes a new right that applies retroactively, thereby enabling the Petitioner to timely file his § 2255 Motion. While McDonnell is instructive prospectively regarding the meaning of "official act," for purposes of 18 U.S.C. § 201, the Supreme Court did not explicitly state whether its ruling applied retroactively to cases on collateral review.

A new rule applies retroactively if it fits one of the two exceptions to the general rule of non-retroactivity, as laid out in Teague v. Lane, 489 U.S. 288 (1989). The Teague exception pertinent to the Petitioner's § 2255 Motion is that new substantive rules of law generally apply retroactively. See Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004). A rule articulated by the Court is "new," "if the result was not

---

[4] McDonnell was decided on June 27, 2016, and the Petitioner's § 2255 Motion was filed on June 23, 2017.

dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301. Further, "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." Schriro, 542 U.S. at 353 (citing Bousley v. United States, 523 U.S. 614, 620-21 (1998)).

A Supreme Court rule that interprets the language of a federal statute, thereby narrowing the scope of that statute, is generally considered a new substantive rule for purposes of retroactivity. See Bousley, 523 U.S. at 620. As described above, the Court in McDonnell narrowed the scope of conduct that falls within the statutory prohibitions of 18 U.S.C. § 201. The Supreme Court did not explicitly state, nor, to this court's knowledge, has the Fourth Circuit stated, whether the Supreme Court's holding regarding the statutory meaning of "official act" constitutes a new substantive rule pursuant to Teague.[5] However, if the holding is a new substantive rule according to Teague and its progeny, then McDonnell likely applies retroactively to the Petitioner's conviction.

---

[5] The Fourth Circuit has addressed the application of McDonnell since it was decided. See United States v. Pinson, 860 F.3d 152 (4th Cir. 2017). However, Pinson was based on a direct appeal, not a § 2255 motion, so the issue of whether McDonnell applies retroactively to cases on collateral review was not an issue. See id. at 157. See infra note 8 and accompanying text.

However, the holding in McDonnell was not solely in regard to the meaning of "official act" for purposes of 18 U.S.C. § 201. McDonnell's holding regarding the statutory meaning of "official act" was made within the larger context of determining whether the jury instructions given at the defendant's trial were correct. See McDonnell, 136 S. Ct. at 2373-75.[6] A holding regarding the validity of particular jury instructions applies the judicial principle that jury instructions may not be erroneous, and thus would not be considered a new substantive rule under Teague.[7] Therefore, whether McDonnell applies retroactively on collateral review depends on which of the two holdings provided by the Supreme Court is considered. If the overarching rule articulated by McDonnell is the Court's statutory interpretation of "official act" for purposes of 18 U.S.C. § 201, then such rule likely would be retroactive on collateral review. If McDonnell ultimately stands for the long-established principle that a jury instruction is erroneous

---

[6] Jury instructions are irrelevant to the Petitioner's case, because the Petitioner pleaded guilty to Acceptance of a Bribe by a Public Official. See Plea Agreement; supra Part I.

[7] The second Teague exception to non-retroactivity—that new "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding" apply retroactively—is also not relevant to this holding of McDonnell. See Saffle v. Parks, 494 U.S. 484, 495 (1990) (citing Teague, 489 U.S. at 311). That jury instructions may not be erroneous is merely a restatement of an existing legal principle, not a new watershed rule of criminal procedure.

if it is based on an invalid legal theory, then McDonnell is not retroactive. Accordingly, because of this distinction between the statutory interpretation holding and the jury instruction holding, whether McDonnell applies retroactively to cases on collateral review remains an open question of law in this circuit, and, therefore, must be determined at a threshold level here.[8]

This court is of the opinion that the overarching rule of the holding in McDonnell is the statutory interpretation of "official act," for purposes of 18 U.S.C. § 201. Therefore, the meaning of "official act," in 18 U.S.C. § 201(b)(2)(A) as interpreted by the Supreme Court in McDonnell, is a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Thus, the court **FINDS** the Petitioner's § 2255 Motion to be timely, because it was filed within one year of the Supreme Court's decision in McDonnell, and the court will proceed to consider the § 2255 Motion on the merits.

### B. Whether Charged Conduct Constitutes "Official Acts"

Assuming that McDonnell establishes a new substantive rule that applies retroactively, and, thus, that the Court's narrowed interpretation of "official act" applies to the Petitioner's

---

[8] The Supreme Court has not addressed the retroactivity of McDonnell, nor has the Fourth Circuit. See supra note 5.

conviction, the undisputed facts of this case, as detailed in the Statement of Facts to which the Petitioner swore under oath as accurate, are sufficient to support the Petitioner's conviction for Acceptance of a Bribe by a Public Official. For the reasons detailed herein, this court **FINDS** that the Petitioner has not shown by a preponderance of the evidence that he is entitled to relief.

### 1. **Statement of Facts**

As a preliminary matter, in making its determination the court relies only on the facts that the Petitioner agreed to, under oath, in the Statement of Facts. The Petitioner attempts to introduce new, additional facts in his § 2255 Motion, Memorandum in Support, Affidavit, and Reply to cast doubt on the accuracy of the Statement of Facts. For example, the Petitioner states that MAETS and MHD were qualified for the jobs for which he recommended them, they were not the only companies he recommended, and they were re-hired for additional contracts without the Petitioner's input. Mem. in Supp. at 3. He also states that his "role with the prime contractors was minimal," consisting of attending meetings and relaying limited communications between Toy and the prime contractors. Pet. Aff. ¶ 12, ECF No. 103-1; see also Mem. in Supp. at 5 (stating Petitioner merely proofread already-prepared Statements of Work); id. at 14 (stating Petitioner exercised "minimal

15

discretion and had minimal influence on contracting decisions");
id. at 15 (stating Petitioner "exercised minimal discretion in
'influencing' prime contractors to work with recommended
sub-contractors").

However, these newly-alleged facts seek to contradict the
information to which the Petitioner has already agreed. For
example, the Statement of Facts states that the Petitioner
"worked closely . . . in managing MSC's telecommunications
projects by writing Statements of Work as directed by Toy,
preparing and executing budgets, reviewing proposals, and
influencing the awarding of U.S. Government task orders."
Statement of Facts at 1. The Petitioner also approved in the
Statement of Facts that he "agreed . . . to give favorable
treatment to [MAETS] in connection with U.S. Government
contracts, subcontracts, and task orders." Id. at 2; see also
id. at 3 ("In conjunction with the establishment of [MHD],
Miserendino and Toy assisted [MHD] in obtaining MSC-related task
orders."); id. at 4-5 (stating Petitioner assisted in the
preparation of Statements of Work; influenced, or caused to be
influenced, government officials and MSC contractors; and
provided favorable treatment to MAETS and MHD in connection with
task orders); id. at 5 ("Miserendino and Toy . . . assured Smith
that they would continue to send MSC-related work to [MAETS].").

Therefore, to the extent the Petitioner alleges new facts in his § 2255 Motion, Memorandum in Support, Affidavit, and Reply, these facts dispute many of those to which he has already sworn under oath. Such an attempt to circumvent the Statement of Facts need not be considered by the court. See Jones v. Taylor, 547 F.2d 808, 810 (4th Cir. 1977) ("[W]e have repeatedly held that in postconviction attacks a prisoner will not be heard to controvert the statements made by him at the time that he tendered a plea of guilty unless he makes some reasonable allegation why this should not be so." (citations omitted)). Nor is an evidentiary hearing on such a § 2255 Motion required. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 [plea] colloquy is conclusively established, and a district court, should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."); see also United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004); United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003).

Additionally, to the extent that the alleged facts in the Petitioner's Affidavit seek to supplement, rather than contradict, the Statement of Facts, the Petitioner's efforts fail to support his § 2255 Motion. See Pet. Aff. Such facts,

even if presumed true, do not assist the Petitioner in showing that he is entitled to relief. Primarily, the Petitioner seeks to minimize his authority and discretion in the awarding of government contracts, subcontracts, and task orders. The Petitioner states that he "was not the only person proofreading" the Statements of Work, and he "was never the final reviewer for and never 'approved' or certified any of these Statements of Work." Id. ¶ 9. In support of his argument, the Petitioner admits that he recommended other contractors, in addition to his recommendations of MAETS and MHD. Id. ¶ 11; see also id. ¶ 13 (stating Petitioner "was only a civilian contractor, so a recommendation from [him] would have meant nothing without Mr. Toy"); id. ¶ 14 (alleging Petitioner "spent less than 5% of [his] work hours" on contracting decisions involving MAETS and MHD).

However, there is no such requirement that, in order to engage in an "official act," the public official charged under 18 U.S.C. § 201 must be the ultimate decision-maker. Instead, McDonnell made clear that a public official may commit an "official act" by agreeing to make a decision or take an action on a question, matter, cause, suit, proceeding, or controversy. McDonnell, 136 S. Ct. at 2368. Additionally, advising another official, "knowing or intending that such advice will form the basis for an 'official act' by another official" is sufficient

18

to establish an "official act" as well. Id. at 2372. That the official need only provide advice or agree to act logically means that the official need not be the ultimate decision-maker; in fact, these avenues for establishing an "official act" appear to presume that the public official does not necessarily possess the ultimate authority or discretion to engage in the "official act" at issue. See also United States v. Pinson, 860 F.3d 152, 168-69 (4th Cir. 2017) (finding an "official act" when a trustee "worked hard to persuade" other university officials to approve a purchase); United States v. Boyland, 862 F.3d 279, 291-92 (2d Cir. 2017) (finding an "official act" when an assemblyman promised to ensure that a separate agency would approve particular licenses and permits); United States v. Repak, 852 F.3d 230, 253-54 (3d Cir. 2017) (finding that making recommendations to an agency as to which contractors it hired constituted an "official act").

Accordingly, the Petitioner does not allege any extraordinary circumstances that would warrant disregarding the Statement of Facts that have been duly sworn. See, e.g., White, 366 F.3d at 297-300 (holding that ineffective representation rendering the guilty plea involuntary constituted extraordinary circumstances warranting an evidentiary hearing). Instead, the Petitioner attempts to challenge the facts to which he agreed, in the wake of the Supreme Court's decision in McDonnell.

Accordingly, the court will only utilize the Statement of Facts in determining whether the Supreme Court's interpretation of "official act," for purposes of 18 U.S.C. § 201(a)(3), supports the Petitioner's conviction for Acceptance of a Bribe by a Public Official.

## 2. Application of McDonnell

Considering all facts sworn to in the Statement of Facts, the first part of McDonnell's requirements has clearly been met in this case: the government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. See McDonnell, 136 S. Ct. at 2368. The "question, matter, cause, suit, proceeding or controversy" identified by the government in the Petitioner's case is the awarding of U.S. Government contracts, subcontracts, and task orders. See Statement of Facts at 2 ("Miserendino and Toy agreed . . . to give favorable treatment to [MAETS] in connection with U.S. Government contracts, subcontracts, and task orders in exchange for receiving regular cash payments."); id. at 3 ("Miserendino and Toy assisted [MHD] in obtaining MSC-related task orders."). All of the Petitioner's actions and decisions detailed in the Statement of Facts, which benefitted MAETS and MHD, centered on the awarding of government contracts, subcontracts, and task orders.

The court **FINDS** that the awarding of contracts, subcontracts, and task orders is a "question, matter, cause, suit, proceeding or controversy" that "is 'pending' or 'may by law be brought' before a public official." McDonnell, 136 S. Ct. at 2372; see also Repak, 852 F.3d at 254 ("The assigning of contractors to [agency] projects can thus 'naturally [be] described' as a matter 'pending' before the [agency]." (quoting McDonnell, 136 S. Ct. at 2369)). The awarding of government contracts is "relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." McDonnell, 136 S. Ct. at 2369. The specificity of awarding particular government contracts, subcontracts, and task orders "is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." Id. at 2372. In fact, the awarding of a government contract "is not only akin to an agency determination—it is an agency determination." Repak, 852 F.3d at 253 (emphasis in original). A decision by an agency, in this case MSC, an entity of the United States Navy, see Statement of Facts at 1, "to award money to contractors as part of its public mission . . . is undoubtedly the 'formal exercise of governmental power.'" Repak, 852 F.3d at 253 (quoting McDonnell, 136 S. Ct. at 2372); see also United States v. Conley, __ F. Supp. 3d __, No. 3:13cr28, 2017 WL 5953153, at *5 (E.D. Ky.

Dec. 1, 2017) ("[T]he official act here is the bidding process and awarding of certain public construction contracts."). Thus, there is a sufficiently specific "question, matter, cause, suit, proceeding or controversy" identified in the Petitioner's case upon which his conviction is based. 18 U.S.C. § 201(a)(3).

The second requirement of McDonnell, that the government prove "the public official made a decision or took an action 'on' [the] question, matter, cause, suit, proceeding, or controversy, or agreed to do so," is also met in the Petitioner's case. McDonnell 136 S. Ct. at 2368. The Petitioner has not met his burden of showing that the conduct described in the Statement of Facts does not constitute taking an action or making a decision "on" the awarding of government contracts, subcontracts, and task orders. See id.

Since the Supreme Court decided McDonnell on June 27, 2016, several courts, including the Court of Appeals for the Fourth Circuit, have applied the Supreme Court's interpretation of "official act," for purposes of 18 U.S.C. § 201, including its requirement that a public official make a decision or take an action "on" the specifically identified "question, matter, cause, suit, proceeding or controversy." 18 U.S.C. § 201(a)(3). Of note is the Second Circuit's decision in United States v. Silver. 864 F.3d 102 (2d Cir. 2017). The Second Circuit held that meeting at a legislator's office regarding an event, and

sending a letter on official letterhead offering to help navigate the state approval process for obtaining a permit, did not satisfy the standards set forth in McDonnell for an "official act." Id. at 120. Instead, the court found that a rational jury, after receiving a proper jury instruction on the meaning of "official act," could have found that, "absent any actual 'exert[ion] of pressure' on other officials regarding a particular matter under their consideration," no "official act" was present. Id. (alteration in original). Further, a state legislator's expression of approval, or disapproval, on a matter of public concern in his district did not constitute an "official act," because "[t]aking a public position on an issue, by itself, is not a formal exercise of governmental power." Id. at 122.

While some convictions have been reversed in the wake of McDonnell, many others have been upheld, either on direct appeal or in § 2255 motions, after courts applied the Supreme Court's requirement that a public official make a decision or take an action "on" the question, matter, cause, suit, proceeding, or controversy at issue. See McDonnell, 136 S. Ct. at 2368. For example, signing a contract on behalf of a state university, see Pinson, 860 F.3d at 168-69, and obtaining a state assembly resolution honoring a specific individual, see Silver, 864 F.3d at 120, remain "official acts" under McDonnell. Additionally,

hiring a specific individual "squarely fit[s] the definition of an official act under McDonnell." United States v. Fattah, 223 F. Supp. 3d 336, 362-63 (E.D. Pa. 2016).

While the Petitioner, in his § 2255 Motion, seeks to minimize his role in the conspiracy among himself, Toy, MAETS, and MHD by stating that he "played a minor technical role in what was a largely pro-forma approval process of companies who were generally qualified to fulfill MSC's task orders," Mem. in Supp. at 3, several portions of the Statement of Facts contradict that statement. For example, the Statement of Facts states that "Miserendino worked closely . . . in managing MSC's telecommunications projects by writing Statements of Work as directed by Toy, preparing and executing budgets, reviewing proposals, and influencing the awarding of U.S. Government task orders." Statement of Facts at 1. The Petitioner further "assist[ed] in the preparation of Statements of Work for tasks" that MAETS and MHD sought to perform under government contracts, subcontracts, and task orders. Id. at 4. Such direct actions by a public official are analogous to signing contracts, presenting and passing legislation, or making hiring decisions. See Pinson, 860 F.3d at 168; Silver, 864 F.3d at 120-21; Fattah, 223 F. Supp. 3d at 362-63. Moreover, in return for these actions, Miserendino received regular cash payments, and other things of value, from MAETS and MHD. Id. at 2-4.

Additionally, "a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." McDonnell, 136 S. Ct. at 2370-71 (emphasis added) (citation omitted). To that end, "[t]he agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain." Id. at 2371. The public official, in fact, need not "intend to perform the 'official act,' so long as he agrees to do so." Id. Several courts have upheld convictions pursuant to 18 U.S.C. § 201 on this theory of liability.

For example, the Second Circuit found that a state assemblyman promising "that he would ensure that all of the necessary governmental actions occurred," in order for those paying him to receive licenses and permits, was sufficient to support his conviction. Boyland, 862 F.3d at 291. The defendant "agreed to ensure that favorable governmental decisions would be made, whether for licensing, work contracts, zoning, or funding." Id. at 292. Such an agreement to make a decision or take an action is sufficient to affirm a conviction that requires the presence of an "official act." See id. at 291-92. Additionally, promising "federal appropriation for . . . a corporation," in exchange for monetary benefit constitutes an

agreement sufficient to support the finding of an "official act." See Fattah, 223 F. Supp. 3d at 355.

Just as the Statement of Facts supports a finding that the Petitioner engaged in direct actions and decisions in exchange for monetary benefit, the Statement of Facts also shows that the Petitioner "agreed to do so." McDonnell, 136 S. Ct. at 2368. "Miserendino . . . agreed with Hardman and Smith [the owners of MAETS] to give favorable treatment to [MAETS] in connection with U.S. Government contracts, subcontracts, and task orders." Statement of Facts at 2. Further "Miserendino . . . assured Smith that they would continue to send MSC-related work to Smith's company, [MAETS]." Id. at 5. Such agreements to provide favorable treatment, although not explicit as to the means to be used, fit the statutory interpretation of "official acts" provided by the Court in McDonnell. See McDonnell, 136 S. Ct. at 2370-71.

Lastly, the Court in McDonnell established that a public official engages in an official act when he uses "his official position to exert pressure on another official to perform an 'official act,' or [advises] another official, knowing or intending that such advice will form the basis for an 'official act' by another official." Id. at 2372. Such pressure may include "work[ing] hard to persuade" other officials to approve a land purchase, or encouraging other officials to send official

letters of intent. See Pinson, 860 F.3d at 169. Additionally, sending letters vouching for a particular individual's character to another official; expressing strong support for a matter; and requesting that another official approve of such a matter have been found sufficient to establish that an official used "his official position to exert pressure on another official," or advised "another official, knowing or intending that such advice [would] form the basis for an 'official act.'" McDonnell, 136 S. Ct. at 2372; see also Boyland, 862 F.3d at 291-92.

Particularly relevant to the Petitioner's case, the Third Circuit found that making recommendations to a board of directors, as to which contractors should be used on specific agency projects, supported the finding of an "official act." Repak, 852 F.3d at 254; see also Fattah, 223 F. Supp. 3d at 362 (finding that sending letters to a Senator and the President strongly recommending an individual for ambassadorship, among other things, "was without question exerting pressure on and if not pressure certainly seeking to provide advice . . . with the intent that [the Senator and President] would act on that advice"); Conley, 2017 WL 5953153, at *5 (affirming defendant's conviction, in part, because he "submitted information that formed the basis for the Fiscal Court's decision").

There is evidence in the Statement of Facts to support finding that the Petitioner "advise[d] another official, knowing

or intending that such advice [would] form the basis for an 'official act' by another official." McDonnell, 136 S. Ct. at 2372. The Statement of Facts states that the Petitioner "influenc[ed], or caus[ed] to be influenced," both MSC contractors and other government officials to help MAETS and MHD obtain government contracts, subcontracts, and task orders. Statement of Facts at 4-5; see also id. at 1 ("Miserendino worked closely . . . in . . . influencing the awarding of U.S. Government task orders."). While "influencing" is rather ambiguous, the Petitioner states in his Affidavit that "influencing" consisted of recommending MAETS and MHD to receive government contracts, subcontracts, and task orders. See Pet. Aff. ¶ 11 ("We both recommended MAETS and MHD when we believed those companies to be the best fit for what the program office needed."); id ¶ 13 ("I backed Mr. Toy's recommendations.").[9]

Making recommendations as to which contractors were to receive government contracts, subcontracts, and task orders is exactly the sort of action contemplated by McDonnell as advising

_____

[9] In the same Affidavit, the Petitioner appears to contradict himself, stating both that he recommended MAETS and MHD, and that his "role was not really in the recommendation stage." Pet. Aff. ¶ 13. In light of these internal contradictions in the Petitioner's Affidavit, and the court's primary reliance on the Statement of Facts in making its findings and determinations, this evidence of the Petitioner making recommendations is considered as one factor upon which the court makes its decision. Ultimately, the other sworn facts in the Statement of Facts weigh against the Petitioner as well.

"another official, knowing or intending that such advice [would] form the basis for an 'official act' by another official." McDonnell, 136 S. Ct. at 2372; see also Repak, 852 F.3d at 254. Therefore, while the Statement of Facts is sparse in detailing what "influencing" constituted in the Petitioner's case, there is some evidence supporting that his actions constituted advising "another official, knowing or intending that such advice [would] form the basis for an 'official act' by another official." McDonnell, 136 S. Ct. at 2372.

In sum, the facts in the Petitioner's Statement of Facts are clearly sufficient to support a finding that he engaged in "official acts" for purposes of 18 U.S.C. § 201. Thus, the Petitioner's conviction for Acceptance of a Bribe by a Public Official, in violation of 18 U.S.C. § 201(b)(2)(A), is valid. A sufficiently clear "question, matter, cause, suit, proceeding or controversy" was identified, and the Petitioner swore, under oath, regarding various decisions he made or actions he took "on" the identified "question, matter, cause, suit, proceeding or controversy." 18 U.S.C. § 201(a)(3). In exchange for these official acts, the Petitioner and Toy jointly received at least $265,000 in cash bribes, and other things of value, from MAETS and MHD. Statement of Facts at 4. Accordingly, the Petitioner has not shown that he is entitled to relief under 28 U.S.C. § 2255 on this ground.

## C. "Stream of Benefits" Theory of Bribery

The Petitioner also seeks to challenge the theory of liability under which he was convicted. See Reply at 11-15. The "stream of benefits" theory of bribery constitutes the government presenting "evidence that shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." United States v. Bryant, 655 F.3d 232, 241 (3d Cir. 2011) (emphasis in original) (citation omitted). Such course of conduct is analogous to "retain[ing] the official's services on an 'as needed' basis, so that whenever the opportunity presents itself, the official will take specific action on the payor's behalf." Id. (citation omitted); see also United States v. Jefferson, 674 F.3d 332, 358-59 (4th Cir. 2012); United States v. Ganim, 510 F.3d 134, 148-49 (2d Cir. 2007).

This theory of liability was rejected by the Supreme Court in the narrow context of 18 U.S.C. § 201(c), which prohibits illegal gratuities to public officials. United States v. Sun-Diamond Growers of Cal., 526 U.S. 398 (1999). The Court requires, in the context of 18 U.S.C. § 201(c), that the government "prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." Id. at 414. The Petitioner argues that, because of Sun-Diamond, "the government would still have to

prove that a payment was promised or made in exchange for a specific act to influence a specific decision," in this case. Reply at 16 (emphasis in original). However, this argument is meritless.

Sun-Diamond was decided within the narrow context of 18 U.S.C. § 201(c) illegal gratuities. Since it was decided, lower courts have continued to accept the "stream of benefits" theory of bribery in other contexts, such as honest services fraud and, importantly, 18 U.S.C. § 201(b) bribery. See, e.g., United States v. Ring, 628 F. Supp. 2d 195, 207-09 (D.D.C. 2009) (applying "stream of benefits" theory to honest services fraud); United States v. Menendez, 137 F. Supp. 3d 709, 716 (D.N.J. 2015) (applying "stream of benefits" theory to § 201(b) bribery). While McDonnell drew heavily on the Court's reasoning in Sun-Diamond, see McDonnell, 136 S. Ct. at 2370, it does not discuss the "stream of benefits" theory of bribery whatsoever as a potential issue in the case. McDonnell's requirement that an official act be specific and focused does not equate to the official act being identified at the time of the illegal agreement. See 18 U.S.C. § 201(a)(3). The Court in McDonnell did not give any indication that its interpretation of "official act," for purposes of 18 U.S.C. § 201(a)(3) would invalidate, or affect in any way, the "stream of benefits" theory of liability for 18 U.S.C. § 201(b) bribery.

Simply put, the Supreme Court has not provided any indication that its holding in Sun-Diamond, rejecting a "stream of benefits" theory in the context of illegal gratuities, has been expanded to 18 U.S.C. § 201(b) bribery, under which the Petitioner was convicted. Further, the Fourth Circuit has approved of the use of the "stream of benefits" theory in other contexts, both before and since Sun-Diamond. See United States v. Quinn, 359 F.3d 666, 673 (4th Cir. 2004) (affirming the "stream of benefits" theory of liability for 18 U.S.C. § 201(b) bribery); United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) (finding that each bribery payment "need not be correlated with a specific official act"). Therefore, there is no indication that the "stream of benefits" theory of bribery, under which the Petitioner was convicted, is invalid as applied to 18 U.S.C. § 201(b). Accordingly, the Petitioner's argument in this regard is without merit.

## IV. CONCLUSION

For the reasons above, the Petitioner's § 2255 Motion is **DENIED**. The court declines to issue a certificate of appealability for the reasons stated herein. The Clerk is **DIRECTED** to send a copy of this Opinion to the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

April 2 , 2018